[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 12351 RE: DEFENDANT FIRST FINANCIAL'S MOTION FOR SUMMARY JUDGMENT
In count two of their complaint, plaintiffs Heritage Bank and RLI/Mt. Hawley Insurance Company ("RLI/Mt. Hawley") seek a declaratory judgment determining whether the defendant Bump City, Inc. and its general liability insurer First Financial Insurance ("First Financial") are liable for damages paid by plaintiffs due to property damage at 173 Church Street, Naugatuck, Connecticut. At all relevant times in suit, plaintiff Heritage Bank owned this property and insured it through a policy with RLI/Mt. Hawley, which insurer paid money to the plaintiff bank for the property damage sustained.
Defendant First Financial has moved for summary judgment, contending that the losses described in plaintiffs' complaint are excluded from coverage under the subject general liability policy. This motion is now before the court for a declaration that First Financial is not obligated to plaintiffs for the damages claimed in their complaint.
The following facts are not in dispute. Heritage Bank leased the subject property to Bump City beginning on August 1, 1993, for a period of six months. Bump City leased the property to operate a teenage night club. The lease required Bump City to obtain insurance for the leased premises. Bump City purchased a general liability policy from First Financial for the policy period of August 2, 1993, through August 2, 1994. Before opening the club, Bump City installed lighting and sound equipment in the leased premises. After two months of operation, the business was not lucrative and was closed. After closing the club, Bump City removed its lighting and equipment, which removal took two days. On the second day, Bump City was unable to enter the leased premises because the locks had been changed, making entry impossible except with the cooperation of the owner, Heritage Bank. Sometime thereafter, Heritage Bank discovered damage to the leased premises, for which it now seeks recovery. The only question before this court is whether First Financial's general liability policy covers the property damage in suit.
The operative complaint is the Amended Revised Complaint dated June 17, 1998 (#124). In that complaint, the plaintiffs in paragraph 9 allege that during the period of use and occupancy or during the period when Bump City was locked out but permitted CT Page 12352 entry for purposes of removing its equipment, Bump City's employees negligently or willfully damaged the plaintiff bank's property. The plaintiffs themselves contend (Plaintiffs' Memorandum in Opposition, p. 6) that the damage had to have occurred under one of the following four scenarios: (1) during the operation of the club, (2) during the removal of the equipment, (3) from vandalism which occurred after the equipment had been removed, or (4) from the negligence of Bump City after it had been locked out and given up control of the premises. First Financial argues that under any of the above scenarios there is no coverage under its policy.
In deciding this motion, the court "[m]ust view the evidence in the light most favorable to the nonmoving party . . . The test is whether a party would be entitled to a directed verdict on the same facts." Cummings and Lockwood v. Gray,26 Conn. App. 293, 297, 600 A.2d 1040
(1991) (citations omitted; internal quotation marks omitted.) Thus, the court must test the question of coverage against each of the four theories proposed by plaintiffs, as to how and when the damage occurred.
The coverage section of the First Financial policy provides in pertinent part that the company will pay on behalf of the insured all sums which the insured shall be legally obligated to pay as damages because of property damage caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises. "Occurrence" is defined in the definition section of the policy as "[a]n accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The pertinent exclusions in the policy are found under Paragraph I -" [This insurance does not apply] (k) to property damage to (1) property owned or occupied by or rented to the insured, (2) property used by the insured, or (3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control."
Connecticut law provides that "[a]n insurance policy is to be interpreted by the same general rules as any other written contract . . . The language must be given its ordinary meaning unless a technical or special meaning is clearly intended . . . [a]nd where the terms of the policy are clear their meaning is not to be forced." Lyon v. Aetna Casualty Surety Co., 140 Conn. 304, CT Page 1235399 A.2d 141 (1953) (citations omitted), see also, Hammer v. Lumberman'sMutual Casualty Co., 214 Conn. 573, 583, 573 A.2d 699 (1990).
The court finds that the language contained in subparagraph (k) is clear and unambiguous. It unquestionably excludes coverage under the above scenarios (1), (2) and (3), proposing that the damage occurred to the subject property either during the operation of the club or upon the removal of equipment prior to the lockout. Such exclusion is clear inasmuch as the property damaged was rented by the insured Bump City, used by the insured and in the care, custody and control of the insured prior to the lockout. Indeed, our supreme court has recognized that such language included in subparagraph (k) is deliberately intended to exclude the insurer from liability for claims for damage to property under the control and management of the insured.See Lyon v. Aetna Casualty Surety Co., supra,140 Conn. 307, 99 A.2d 144 (citations omitted).
As if in acceptance of this result, plaintiffs themselves proposed the fourth possible scenario, that the property damage occurred after Bump City had been locked out and lost control of the premises. According to plaintiffs, Bump City's tenancy was terminated by the lockout. Plaintiffs then suggest that subparagraph (k) cannot apply to exclude coverage for property damage to a premises which the insured no longer occupied, rented, used or controlled.
The court not only accepts that the lockout terminated Bump City's tenancy, as it must (see Sandrew v. Pequot Drug, Inc.,4 Conn. App. 627, 495 A.2d 1127 (1985)), it also finds that such action terminated First Financial's obligation under its general liability policy with Bump City. Specifically, the policy was intended to insure "[a]ll sums which the insured becomes obligated to pay . . . caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises . . ." Policy, paragraph I.1. (underline added.) Obviously, if there is no tenancy there is no coverage.
The court agrees with defendant First Financial that under every construction of the facts proposed by the parties, there was no coverage for Bump City under its policy. Accordingly, the court grants defendant's motion for summary judgment.
PELLEGRINO, J. CT Page 12354